No. 43,345

ROBERT R. SANDERS, *Appellee*, v. UNITED STATES OF AMERICA, *Appellant*.

(389 P. 2d 799)

Opinion filed March 7, 1964.

*Elmer Hoge*, Assistant United States Attorney, of Topeka, argued the cause, and *Newell A. George*, United States attorney, of Topeka, was with him on the briefs for the appellant.

*Russ B. Anderson*, of Emporia, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This appeal stems from an action to quiet title

to certain personal property. The title being clouded by a tax lien filed by the United States government.

It is agreed that the tax lien cannot reach the property in question unless certain challenged transfers are set aside as void for failure to comply with the provisions of the bulk-sales act. We will summarize the facts which present the issues.

On December 4, 1957, Kenneth T. Anderson conveyed to Milo W. Sutton and his wife the personal property used in the publication of a newspaper known as the Salina Advertiser-Sun. The property consisted of linotypes, printing presses and other machinery and equipment used in the preparation and publication of a newspaper. Anderson executed a bill of sale and received as consideration a note in the amount of $29,000 which was secured by a chattel mortgage on the property, subject to a first chattel mortgage to the Planters State Bank in the sum of $20,000. The chattel mortgages were duly recorded.

The Suttons made no payments on the notes and mortgages held by the Planters State Bank and Anderson. On January 23, 1959, Anderson took the property in lieu of foreclosure. The transfer was accomplished by a bill of sale. The value of the property was less than the amounts of the notes and mortgages. It is conceded that there was no attempt to comply with the bulk-sales act (G. S. 1949, 58-101) in connection with any of the transactions.

On April 25, 1959, the United States Internal Revenue Service filed with the Register of Deeds, Saline County, Kansas, a notice of a tax lien against "Milo W. Sutton—Salina Advertiser-Sun," 122 South 5th Street, Salina, Kansas, in the aggregate sum of $4,943.80. This tax represented withholding and federal insurance, commonly known as social security, taxes with the exception of one item for unemployment insurance tax, in the sum of $64.95, and covered the periods ending March 31, 1958, June 30, 1958, September 30, 1958 and December 31, 1958, on the withholding and federal insurance, and for the year 1958 on the unemployment tax.

On the 28th day of May, 1959, the United States Internal Revenue Service filed an additional notice of a tax lien with the Register of Deeds, Saline County, Kansas, against "Milo W. Sutton—Salina Advertiser-Sun," 122 South 5th Street, Salina, Kansas, for withholding tax and social security for the period of January 1, through January 22, 1959, in the sum of $197.77.

On April 1, 1960, Anderson sold the personal property to Robert R. Sanders. It was then discovered that the tax lien had been filed. Sanders brought this action against the United States to quiet title and to have the tax lien removed as a cloud on the title to the property.

The trial court entered judgment in favor of the plaintiff which reads in part:

"It is further by the court considered, ordered, adjudged, and decreed that the Plaintiff is the absolute owner in fee simple of the property described in the Plaintiff's amended petition free and clear of all liens, claims and interests of the Defendant and that the Plaintiff's title in and to said property be quieted in the Plaintiff as against the Defendant."

The defendant, The United States, has appealed.

It is conceded that the tax lien has no validity unless the transfer of the property by the Suttons to Anderson on January 23, 1959, is void. The tax lien was not filed until April 25, 1959. The Internal Revenue Code of 1954 (26 U. S. C. A. § 6323) provides in part:

"(a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—

"(1) Under State or Territorial Laws.—In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice; or . . ."

Appellant states its contention as follows:

"It is the contention of the appellant, defendant below, United States of America, that the Kansas Bulk Sales Act, Section 58-101, G. S. Kan., the pertinent part of which reads as follows: 'The sale or disposal of any part or the whole of a stock of merchandise or the fixtures pertaining thereto, otherwise than in the ordinary course of his trade or business, shall be void as against the creditors of the seller, unless the purchaser receives from the seller a list of names and addresses of the creditors of the seller certified by the seller under oath to be a complete and accurate list of his creditors and unless the purchaser shall, at least seven days before taking possession of the property, or before paying therefor, notify in person or by registered mail, every creditor whose name and address is stated in said list, or of whom he has knowledge of the proposed sale.' is applicable to the sale of the property by Milo W. Sutton to Kenneth T. Anderson, and by Kenneth T. Anderson to Robert R. Sanders, the appellee, plaintiff below."

Our attention is called to *Joyce v. Armourdale State Bank*, 127 Kan. 539, 274 Pac. 200, in which it was held:

"Where a merchant borrows money, and to secure the same gives a chattel mortgage on his stock of goods and fixtures, and, finding himself unable to make the required payments, surrenders and delivers to the mortgagee all or a substantial portion of the goods and fixtures in compliance with the terms of the mortgage, it is such a disposal of the merchandise and fixtures as is contemplated to be within the meaning of the term 'sale and disposal' as used in the bulk-sales law and is a disposal otherwise than in the ordinary course of his trade or business as described in that law.

"If a merchant surrenders and delivers his stock of merchandise to the mortgagee under the circumstances outlined in paragraph one and pursuant to the terms of the chattel mortgage covering the same, without complying with the requirements of the bulk-sales law, either at the time of the execution of the chattel mortgage or at the time of the surrender or delivery of the merchandise, the disposal is void as against creditors of the mortgagor, and the mortgagee becomes a trustee for the creditors of the mortgagor." (Syl. 1 and 2.)

The above case determines the rights of the parties if, but only if, the transfer of the property was subject to the provisions of the bulk-sales law. The question remaining for determination is, does the equipment used in publishing a newspaper constitute "a stock of merchandise or the fixtures pertaining thereto" as that term is used in the bulk-sales law? We must conclude that such equipment is not a stock of merchandise or the fixtures pertaining thereto.

The bulk-sales act was not intended to cover all businesses but merely the property of one engaged in the particular class of business contemplated, i. e., that of buying and selling goods or merchandise. Unless the seller carries what may be designated a stock of merchandise, the bulk-sales law does not apply.

A newspaper is devoted to the dissemination of news and information on any variety of subjects which are of interest to the general public. It sells news and information, not merchandise. News and information cannot be considered as a stock of merchandise. It is argued that a newspaper uses and sells paper. It does make use of paper incidental to its business. However, the paper is not a stock of merchandise for sale. It takes on more the form of a carton in which the news and information is transported to the reader.

In *National Bank v. Hannaman,* 115 Kan. 370, 223 Pac. 478, it is stated at page 372 of the opinion:

"Do the provisions of the statute relate to and cover the restaurant business? We think not. While the restauranteur buys merchandise and resells same, ordinarily, it is not sold in the same form as when purchased. He buys foodstuffs and converts it into edible dishes which are sold. *The statute covers*

only a stock of merchandise and fixtures pertaining thereto. A merchant is one who traffics or carries on trade, one who buys goods to sell again, one who is engaged in the purchase and sale of goods. (*Campbell v. City of Anthony,* 40 Kan. 652, 20 Pac. 492.)" (Emphasis supplied.)

The appellant contends that the Hannaman case was superseded, and in effect overruled, by the more recent case of *Stockyards Petroleum Co. v. Bedell,* 128 Kan. 549, 278 Pac. 739, which held:

"Under the facts and circumstances related in the opinion, appliances for the conduct of a filling-station business, comprising gasoline pumps, tanks and an air compressor, are held to be fixtures pertaining to the business under the provisions of the bulk-sales statute. (R. S. 58-101.)" (Syllabus 1.)

The two cases are readily distinguishable. A filling station, including the fixtures pertaining thereto, is maintained solely for the purpose of buying and retailing merchandise to the general public. The merchandise consists of oil, gas and motor vehicle appliances. In the Bedell case the merchandise consisting of oil, gas, etc., were sold in bulk along with the fixtures.

A newspaper does not carry a stock of merchandise for sale. The sale or mortgage of its machinery and equipment is, therefore, not subject to the provisions of the bulk-sales law.

The judgment is affirmed.

APPROVED BY THE COURT.

FONTRON, J., not participating.