THOMAS DWIGHT *vs.* MAYOR AND ALDERMEN OF THE CITY OF BOSTON.

Shares of the capital stock of a foreign manufacturing corporation, if owned by citizens of this commonwealth, are taxable here for their full value, without deducting the value of the machinery and real estate belonging to such corporation, and taxed to it at the place where it is established.

PETITION for a writ of *certiorari.*

The petition set forth the following facts: The petitioner, a citizen of Boston, in October 1865 presented to the assessors of Boston his petition showing that forty-two shares owned by him in the capital stock of the Pepperell Manufacturing Company, a manufacturing corporation established in the state of Maine, were assessed to him at a valuation of one thousand and seventy-five dollars each, which was their full market value, and no deduction was made for the value of the real estate and machinery on which the corporation was taxed in Maine; that the value of such real estate and machinery, if deducted, would leave four hundred and thirty dollars and ninety cents as the whole amount per share on which stockholders residing in Massachusetts should be taxed, according to law and usage; whereupon he prayed an abatement of his tax. This abatement was refused by the assessors; and thereupon the petitioner presented to the mayor and aldermen a petition setting forth the facts, and praying them to revise the action of the assessors, and to grant him the abatement prayed for. To this petition was annexed the affidavit of George Jackson, an assessor of Boston from 1842 to 1865, inclusive, with the exception of two years, showing that in 1842 it was the established practice, in assessing shares of the capital stock of manufacturing corporations, to deduct the value of the real estate and machinery belonging thereto and taxed to the corporations; and that the same rule was applied to shares of the capital stock of such corporations established out of the Commonwealth, and no discrimination was made between them until the passage of *St.* 1864, *c.* 208, exempting shareholders in domestic corporations from direct taxation; and until 1865 shares of the

capital stock of foreign manufacturing corporations have been assessed on their market value, deducting the value of their real estate and machinery. Upon this petition it was ordered that the petitioner have leave to withdraw.

The respondents admitted all the facts set forth in the petition, and thereupon the questions presented were reserved by *Chapman*, J. for the determination of the whole court.

*F. C. Loring & J. T. Morse, Jr.,* for the petitioner. The question presented here depends upon the interpretation to be put upon Gen. Sts. c. 11, § 12, cl. 2; * or, if the language of this clause should prove to be ambiguous, then by the effect of the long established practice. This clause was first enacted by *St.* 1832, c. 158, § 2; and it was embodied in Rev. Sts. c. 7, §§ 9, 10. Nowhere does any distinction appear to have been made between foreign and domestic manufacturing corporations. The language of the clause is, " in assessing stockholders for their shares in any " such corporation; and this is equivalent to saying in " all " such corporations. Section 4, providing for the taxation of shares in corporations situated out of the state, shows that such corporations were not overlooked, and if the legislature had not intended that foreign corporations should be included in § 12, they would have said so. In order to maintain the construction contended for by the respondents, the words " within the state " must be interpolated into the statute. But to do this would be contrary to well settled rules of legal construction. See *Great Barrington* v. *County Commissioners*, 16 Pick. 572; *Doane* v. *Phillips*, 12 Pick. 226.

By the construction contended for by the respondents, a double taxation would be imposed on the petitioner; but it has always been the consistent rule of the court to avoid double axation if possible. In this case, double taxation can be

---

* This clause is as follows: " All machinery employed in any branch of manufactures, and belonging to a person or corporation, shall be assessed where such machinery is situated or employed; and, in assessing the stockholders for their shares in any manufacturing corporation, there shall first be deducted from the value thereof the value of the machinery and real estate belonging to such corporation."

maintained only by an implication or interpolation, or forced construction of the written law. *Boston & Sandwich Glass Co* v. *Boston*, 4 Met. 181, 186. *Hardy* v. *Yarmouth*, 6 Allen, 277. *Field* v. *Boston*, 10 Cush. 65. *Opinion of Justices*, 7 Mass. 523. Real estate situated in another state but owned by citizens of Massachusetts is not sought to be taxed here, directly or indirectly, either by an estimate of its value or through the income derived from it. Why should the interest of the petitioner in the real estate of the corporation be brought under another rule ? See *Dorr* v. *Boston*, 6 Gray, 131 ; *Mendon* v. *County of Worcester*, 10 Pick. 235. By *St.* 1821, *c.* 107, § 2, machinery in cotton and woollen manufactories, wherever situated, was exempt from taxation. The *St.* of 1832, *c.* 158, the Rev. Sts. and Gen. Sts. taxed such machinery within this commonwealth, but not elsewhere.

The *St.* of 1864, *c.* 208, §§ 5, 15, for the first time distinguishes foreign from domestic manufacturing corporations, for the purpose of taxation, by wholly relieving shareholders in the latter from taxation. But this act does not in terms repeal the clause of the Gen. Sts. now under discussion, but only so much thereof as is inconsistent with the new act. But to what can this clause apply, if not to foreign corporations ?

But if it should be held that the language of this clause of the Gen. Sts., considered by itself, will sustain the construction contended for by the respondents, then the question arises whether the assessors in 1865 could change the uniform practice since 1832, without authority from the legislature. It is settled by the decisions that the practical construction put upon a statute when first enacted, or when first acted upon, and uniformly persisted in for years, is so conclusive upon the question of interpretation that it cannot be altered except by the legislature. *Rogers* v. *Goodwin*, 2 Mass. 475. *Packard* v. *Richardson*, 17 Mass. 144. *Opinion of Justices*, 3 Pick. 517. *Commonwealth* v. *Hartnett* 3 Gray, 450. The law as laid down in these cases must be taken as conclusive on the present question. From 1832 to the present time a large amount of stock in foreign corporations has notoriously been owned in Massachusetts. Yet

Dwight *v.* Mayor, &c. of the City of Boston.

the assessors have never construed the words in the statute to be limited to domestic corporations.

The shares in foreign manufacturing corporations are not taxable under the Gen. Sts., not being moneyed corporations, and there being no other description under which such shares can be taxed. Under the constitution, pt. 2, *c.* 1, § 1, the legislature have no power to tax these shares, they not being " persons or estate within the Commonwealth," or " produce, goods, merchandise or commodities brought into, produced, manufactured or being within it." If the owner of such shares was legally liable to be taxed equally with the owners of shares in domestic corporations, under Gen. Sts., such equality was destroyed by *St.* 1864, *c.* 208. The tax on the former then became unreasonable and disproportional, and so void.

No practical difficulty has been found hitherto in ascertaining the value of the shares in foreign manufacturing corporations, deducting the value of the real estate and machinery taxed to the corporations. Assessors may tax on the full market value till satisfied by the persons taxed as to what deduction should be made.

*P. W. Chandler & J. B. Thayer,* for the respondents. The construction of the statute contended for by the petitioner is too narrow. Upon a consideration of the general policy of our system of taxation, of the various statutes, the history of our legislation, the real nature of the mischiefs to be remedied, and the remedies proposed to be applied, it will appear that the clause in question refers only to domestic corporations.

The Gen. Sts. *c.* 11, §§ 1–5, define what property shall be taxed and what shall be exempted ; and it was not the purpose of § 12 to define what shall be taxed or exempted, but to fix the place where all the taxable personal property shall be assessed. The exception of machinery in *cl.* 2 obviously relates to such only as is situated within this commonwealth. And, this being so, the connected portion of the same clause naturally refers to the same machinery, *Sandiman* v. *Breach,* 7 B. & C. 96, 100. *Salkeld* v. *Johnston,* 1 Hare, 196, 208. *Boston & Sandwich Glass Co.* v. *Boston,* 4 Met. 181, 185, 186.

It is the policy of our law to tax all property of the inhabitants of Massachusetts not expressly exempted. Gen. Sts. *c.* 11 § 2. Rep. of Com. on Rev. Sts. *c.* 7, § 2, *note.* The legislature merely excluded from taxation real estate situated elsewhere. Rev. Sts. *c.* 7, § 3. Gen. Sts. *c.* 11, § 3. In § 4, it is declared that personal estate shall include, for the purpose of taxation, " stocks in turnpikes, bridges and moneyed corporations, within or without the state." The phrase " moneyed corporations " includes manufacturing companies. See Rep. of Com. on Rev. Sts. *c.* 7, § 4, *note.* *Sts.* 1821, *c.* 107, § 2 ; 1830, *c.* 151. The clause now in question was not intended to exempt any property from taxation.

If assessors are to deduct the value of real estate and machinery belonging to foreign corporations, how are they to ascertain it ? There is no provision in our statutes for this, and there never has been any ; while, in reference to domestic corporations, the statutes have repeatedly provided for furnishing accurate returns. Gen. Sts. *c.* 68, §§ 20, 22. Res. 1860, *c.* 72. *Sts.* 1861, *c.* 171 ; 1862, *c.* 174 ; 1864, *c.* 201.

The provision allowing a deduction of the value of real estate is a special privilege to manufacturing corporations. No other corporations have the benefit of any similar provision. Formerly even manufacturing companies had not this privilege. *Salem Iron Factory Co.* v. *Danvers*, 10 Mass. 514. Machinery in cotton and woollen manufactories was originally exempted for the encouragement of manufactures. *St.* 1821, *c.* 107, (Metcalf's ed.) *note* 2. Linen manufactories were afterwards added to the list. But the exemption was repealed by *St.* 1828, *c.* 143 ; and revived, with the addition of real estate, by *St.* 1832, *c.* 158, § 2. But it cannot be supposed that this provision was intended to operate as an encouragement to manufactures in other states. *Holton* v. *Bangor*, 23 Maine, 264. The law-making power in each state looks to the advantage of its own citizens. There is no such thing as magnanimity in legislation. All states carefully discriminate in favor of their own citizens. The legislature of Massachusetts intended to do this. The manufacturing policy of this commonwealth is one of the marvels of modern times.

There is nothing like it anywhere. The race of men who laid the foundation of the system are now dead. It was so arranged as to keep capital here. Our manufacturing facilities are far short of those of Maine. These discriminations were made in favor of our own citizens. But the construction contended for by the petitioner would actually tend to discriminate against our own citizens. For ten years after the enactment of *St.* 1832, *c.* 158, the laws of Maine exempted from taxation the machinery in cotton and woollen manufactories. *Holton* v. *Bangor,* 23 Maine, 264. Such also was formerly the law in New Hampshire, New York, and probably elsewhere. *Smith* v. *Burley,* 9 N. H. 423. *Columbian Manuf. Co.* v. *Vanderpool,* 4 Cow. 556. Suppose they return to their former policy in Maine. If the principle contended for by the petitioner is adopted, it will be better for us to go to Maine to make our investments. It is plain that stock in all other foreign corporations is entitled to no such deduction. Why should not foreign manufacturing corporations share the burdens of all others ?

It is said that the petitioner will be subjected to a double taxation. We admit this. But there is no objection to a double taxation, if the law provides for it. There is no doubt that a person living here can be taxed not only for his personal but for his real estate, situated without this commonwealth. But the objection of double taxation only arises when two taxes are imposed by the same jurisdiction. Suppose that a citizen of Boston buys British consols. He knows that they will be taxed in England. Shall they not also be taxed here ?

It is also said that there was a contemporaneous construction put upon this statute, and a long practice thereunder. There was such a custom of the assessors in Boston; but no such custom elsewhere is shown. The argument is, that a custom of these gentlemen in the city hall shall rule this court; a custom adopted by them when no question was ever raised. Such is not a contemporaneous construction in the true sense of that term ; that is, a construction by judges, legislators, or sages of the law. Dwarris on Sts. 562. Sedgw. on St. & Const. L. 251. Broom's Max. (2d ed.) 608, 609. *Opinion of Justices*

3 Pick. 517. *Packard* v. *Richardson*, 17 Mass. 122. But no contemporaneous construction is of weight where the meaning of a statute is clear; Smith on St. & Const. L. § 627; or when the construction is simply local, as in this case. *The King* v. *Hogg*, 1 T. R. 721. *Butler* v. *Charlestown*, 7 Gray, 12, 16.

DEWEY, J.  Shares in a manufacturing corporation are personal estate, and as such are taxable in the place where the owner resides.  In the absence of any statute authorizing a deduction, in making an assessment of any portion of the capital which they represent, they are to be taxed at their fair market value, and as representing so much personal estate held by the owner.  The enactments in Gen. Sts. *c.* 11, § 12, *cl.* 2, making provision for assessing the machinery and real estate of such corporations in the towns in which they are situated, and requiring a deduction from the value of the shares to a corresponding amount, are entirely local in their character, and apply only to manufacturing corporations chartered within the Commonwealth.  The clause in this section of the statute requiring a deduction of the value of machinery and real estate is not to be taken as a general provision, regulating the taxation of all shares in manufacturing corporations wherever the corporations may be situated, but as directly connected with the previous clause, requiring the assessment of the machinery and real estate in the towns where the machinery is situated and employed.  That provision can only be applicable to manufacturing corporations established within this commonwealth, as it is only in relation to such corporations that our legislature could so require.  As to them, having provided for taxation of a certain part of the capital in the towns in which they were situated, the statute requires a deduction of a like amount from the value of the shares, in order to avoid double taxation in this commonwealth of property wholly taxable here.  But our whole system of taxation, as established and practised, is to disregard the liability of shares in foreign corporations to taxation in the states where they are situated.  Thus shares in foreign railroad corporations held by citizens of this state are fully taxed here, and no deduction is made for any taxation to which the corporations are subject in

the states where they are situated. So it is in regard to shares held by our citizens in banks, insurance companies and other moneyed corporations, situated in other states. Such shares, when held by our citizens, are here treated as so much personal estate, following the person of the owner, and taxable at their full value in this commonwealth, regardless of what may be the foreign law as to taxation of the capital or any part of it elsewhere. . The evidence of usage was insufficient to control the legal interpretation of a provision of the statute.

*Petition dismissed.*